# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TABBATHA JOHNSON

CIVIL ACTION

VERSUS

16-422-SDD-RLB

EAST BATON ROUGE SCHOOL SYSTEM

## RULING

This matter is before the Court on the *Motion for Partial Summary Judgment*[1] filed by Defendant, East Baton Rouge Parish School System ("Defendant"). Plaintiff, Tabbatha Johnson ("Plaintiff"), has filed an *Opposition*[2] to the motion, to which Defendant filed a *Reply*.[3] For the following reasons, Defendant's motion shall be granted.

## I. FACTUAL BACKGROUND

Plaintiff began working for Defendant as a substitute teacher in August 1999,[4] and she was hired as a paraprofessional at Glasgow Middle School ("Glasgow") in 2008.[5] Plaintiff worked in the Exceptional Student Services Department ("ESS"), which provides expertise to schools and parents regarding the implementation of curricular and instructional initiatives that support the achievement of students with disabilities in

---

[1] Rec. Doc. No. 167.
[2] Rec. Doc. No. 173.
[3] Rec. Doc. No. 192.
[4] Rec. Doc. No. 167-1 at 2 (Deposition of Tabbatha Johnson, p. 14).
[5] *Id.* at 2-3 (Deposition of Tabbatha Johnson, pp. 14-15).
50025

compliance with state and federal mandates.[6] Students within the ESS Department receive services in accordance with their Individualized Education Programs ("IEPs") in the least restrictive environment. IEPs are usually prepared by the Special Education Teacher with input from other educators involved in the student's education. IEPs and related documents are maintained electronically by the School System and are uploaded to the Special Education Reporting Database ("SER"), which is maintained by the Louisiana Department of Education ("LDE").[7]

Glasgow's ESS Department is supervised by the Glasgow administration and the School System's ESS Office. In May 2015, Erin Howard ("Howard") was the Principal at Glasgow, Shana Wilson ("Wilson") was the Assistant Principal at Glasgow, and Elizabeth Taylor Chapman ("Chapman") was the Director of the ESS Office.[8]

Defendant contends Plaintiff's attendance during the first month of the 2015-2016 school year was sporadic as Plaintiff was tardy, absent, or left early on several days in August. This resulted in Plaintiff receiving a Written Notation of Verbal Reprimand dated August 31, 2015.[9] Wilson had a conference with Plaintiff on September 3, 2015 to address this reprimand.[10] Later that same day, Defendant's Human Resources ("HR") Department received an Employee Complaint regarding Plaintiff submitted by Takeisha Lewis ("Lewis"), a fourth grade teacher at Capitol Elementary School. Lewis claimed that, on the previous day, Plaintiff went to her classroom at Capitol Elementary School before the end of the school day to discuss a personal matter. At the time, school was

---

[6] *Id.* at 4 (Deposition of Tabbatha Johnson, p. 21).
[7] Rec. Doc. No. 167-3 at 1-2 (*Affidavit* of Shana Wilson, ¶ 3).
[8] *Id.* at 2 (*Affidavit* of Shana Wilson, ¶ 4).
[9] Rec. Doc. No. 167-1 at 43-44.
[10] Rec. Doc. No. 167-3 at 4 (*Affidavit* of Shana Wilson, ¶ 10).

still in session, and Lewis reported that she still had students present in her classroom. Although Lewis allegedly believed Plaintiff was there to discuss a student, Plaintiff told Lewis that they were "sleeping with the same man."[11]

After receiving this complaint, HR placed Plaintiff on administrative leave with pay and conducted an investigation of the incident.[12] The HR team gathered information from several individuals with knowledge of the matter, and Plaintiff was asked to submit a written response to Lewis' complaint.[13] During the investigation, Plaintiff met with HR on three occasions – September 3, 8, & 13 – and was accompanied by her union representative, Carnell Washington, each time.[14]

After concluding its investigation, HR determined that Plaintiff approached Lewis during school hours to discuss a personal matter; Lewis felt threatened by this interaction; Plaintiff failed to report to the Capitol Elementary office and sign in when she arrived on campus; and the Capitol Elementary Principal was very concerned about the incident. Plaintiff denied Lewis' version of events and maintains that she did not approach Lewis in a threatening manner; however, Plaintiff's statement confirmed that she approached Lewis during school hours to discuss a personal matter, and Plaintiff admitted that she "made a mistake in [her] judgment."[15]

Plaintiff and Washington met with HR to discuss the investigation results, and Plaintiff was advised that HR was recommending her termination for inappropriate

---

[11] Rec. Doc. No. 167-1 at 48.
[12] *Id.* at 49.
[13] Rec. Doc. No. 167-1 at 27-30 (Deposition of Tabbatha Johnson, pp. 117-119).
[14] Rec. Doc. No. 167-2 at 3-6 (*Affidavit* of Millie Williams, ¶¶ 7-11).
[15] Rec. Doc. No. 167-1 at 50; Rec. Doc. No. 167-2 at 3-6 (*Affidavit* of Millie Williams, ¶¶ 7-12).
50025

behavior and policy violations.[16] Plaintiff was given the opportunity to resign, but she declined.[17] Plaintiff's termination was approved, and Plaintiff filed a written appeal of the decision, but her termination was upheld.[18]

Plaintiff filed this lawsuit alleging race discrimination pursuant to Title VII of the Civil Rights Act of 1964;[19] disability discrimination and retaliation under the Americans with Disabilities Act ("ADA");[20] reprisal in violation of the Louisiana Whistleblower Statute;[21] a violation of the Louisiana Database Security Breach Notification Law ("LDSBNL");[22] a claim that her final wages were withheld in violation of La. R.S. 23:631; and claims under various Louisiana criminal statutes. Defendant now moves for summary judgment on these claims.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[24] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's

---

[16] Rec. Doc. No. 167-1 at 30; 33; 53 (Deposition of Tabbatha Johnson, pp. 188; 199).
[17] *Id.* at 31 (Deposition of Tabbatha Johnson, p. 192).
[18] Rec. Doc. No. 167-2 at 7 (*Affidavit* of Millie Williams, ¶¶ 14-16).
[19] 42 U.S.C. § 2000e *et seq.*
[20] 42 U.S.C.A. § 12101 *et seq.*
[21] La. R.S. 23:967.
[22] La. R.S. 51:3071.
[23] Fed. R. Civ. P. 56(a).
[24] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
50025

case."[25] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[26] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[27]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[28] All reasonable factual inferences are drawn in favor of the nonmoving party.[29] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[30] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[31]

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment

---

[25] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[26] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[27] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[28] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[29] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[30] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[31] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

50025

afforded *pro se* plaintiffs by the courts."[32] A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs."[33] Indeed, "a *pro se* litigant is not 'exempt ... from compliance with the relevant rules of procedural and substantive law.'[34] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[35]

### B. Title VII Race Discrimination

Defendant moves for summary judgment on Plaintiff's purported race discrimination claim because she failed to file an EEOC charge based on this alleged conduct. Plaintiff's EEOC charge does not identify any allegations of race discrimination on the part of Defendant; indeed, Plaintiff's charge identifies only disability discrimination and retaliation as grounds for her complaint.[36] Plaintiff opposes this motion, arguing that the EEOC improperly handled her Charge of Discrimination and rendered her "unable to amend" her EEOC charge to allege race discrimination. However, this Court has already addressed Plaintiff's argument in this regard: "The case law is clear and overwhelmingly in support of the view that [a] plaintiff has no claim under any legal theory against the EEOC in connection with the agency's investigation, disposition, enforcement or administration of Title VII or other antidiscrimination laws."[37]

---

[32] *Kiper v. Ascension Parish Sch. Bd.*, 2015 WL 2451998, *1 (M.D. La. May 21, 2015)(citing *Callahan v. C.I.R.*, Civ. A. 99-0295-C-M1, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)).
[33] *Id.*
[34] *NCO Financial Systems, Inc. v. Harper–Horsley*, No.07–4247, 2008 WL 2277843 at *3 (E.D.La. May 29, 2008), quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).
[35] *Id.*, citing *Birl*, 660 F.2d at 593.
[36] Rec. Doc. No. 167-1 at 60.
[37] *Johnson v. EEOC*, No. 2017 WL 4485882 at *2 (M.D. La. May 24, 2017)(quoting *Simien v. E.E.O.C.*, 2009 WL 799982, at *2 (E.D. La. March 24, 2009); *see also Newsome v. Equal Employment Opportunity Comm'n*, 301 F.3d 227, 231-32 (5th Cir. 2002) (district court properly dismissed complaint; plaintiff failed to state a claim against the EEOC for its alleged failure to properly investigate charge of discrimination)).
50025

Before an employment discrimination plaintiff may pursue her claims in federal court, she must exhaust administrative remedies.[38] In order to exhaust administrative remedies, a plaintiff must first file a timely charge of discrimination with the EEOC and receive notice of right to sue.[39] It is undisputed that Plaintiff has never filed an EEOC Charge which identifies allegations of race discrimination on the part of Defendant. Accordingly, Defendants are entitled to summary judgment on Plaintiff's race discrimination claim.

**C. ADA Disability Discrimination and Retaliation**

Plaintiff claims she notified the Glasgow administration that she was requesting accommodations under the ADA on September 1, 2015, and she was subsequently accused of threatening another employee and placed on leave pending an investigation in retaliation for this accommodation request.[40] Defendant points out that Plaintiff has not alleged a retaliation claim under the ADA in either her original *Complaint* or her *Amended Complaint*.[41] As Plaintiff has failed to assert an ADA retaliation claim, summary judgment is granted in favor of Defendant on this claim.[42]

To prove a *prima facie* case for a violation of the ADA, a plaintiff must show that (1) she is disabled or regarded as disabled within the meaning of the ADA, (2) she is qualified for the job position, and (3) she was subjected to an adverse employment action on account of her disability or perceived disability.[43] The ADA defines a "disability" as

---

[38] *Lavigne v. Cajun Deep Foundations, LLC*, 32 F.Supp.3d 718, 726 (M.D. La. 2014)(citing *Taylor v. Books A Million*, 296 F.3d 376, 378–79 (5th Cir.2002).
[39] *Id.*
[40] Rec. Doc. No. 40 at 2.
[41] *See* Rec. Doc. Nos. 1 & 40.
[42] Summary judgment would also be proper to Defendant on the merits of an ADA retaliation for the same reasoning and analysis set forth in this section regarding Plaintiff's disability discrimination claim.
[43] *Id.* at 697. *See also, Suggs v. Central Oil of Baton Rouge, LLC*, 2014 WL 3037213, at *5 (M.D.La. July

50025

"a physical or mental impairment that substantially limits one or more major life activities of such individual;[44] a record of such an impairment; or being regarded as having such an impairment."[45] "'[A]n employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also of the physical or mental limitations resulting therefrom.'"[46]

Defendant moves for summary judgment on Plaintiff's disability discrimination claim, arguing that Plaintiff has not presented summary judgment evidence to create an issue of fact that the Defendant knew of Plaintiff's disability, and Plaintiff's own testimony supports Defendant's contention that it was not informed of an alleged disability. Plaintiff submitted a form to the EEOC on which she appears to have handwritten: "My employer was unaware of most my health cond [sic] conditions (for privacy and to prevent discrimination due to [redacted]. Employer was aware of car accidents and pre-cancer since 2002."[47] In her deposition, Plaintiff was asked if the School System was aware of any other medical conditions she had other than a surgery in the Fall of 2014, and Plaintiff responded, "Not specifically to my knowledge."[48] When asked to explain, Plaintiff testified: "Because aside from the precancerous condition that I discussed with Ms. Howard I was not legally required to tell them and just for reasons of personal confidentiality it wasn't any of their business."[49] Plaintiff further testified: "to my knowledge under the Americans with Disabilities Act I'm only required to tell my

---

3, 2014).
[44] 42 U.S.C. § 12102(2).
[45] 42 U.S.C. § 12102(1).
[46] *Lynch v. Lee*, 2004 WL 1900463 at *4 (E.D. La. Aug. 20, 2004)(quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir.1999)).
[47] Rec. Doc. No. 167-1 at 46-47.
[48] *Id.* at 20 (Deposition of Tabbatha Johnson, p. 81, line 19).
[49] *Id.* at 20-21 (Deposition of Tabbatha Johnson, p. 81, lines 21-25 through p. 82, line 1).
50025

employer that I want coverage, I don't need to discuss with them what the specifics are."[50]

The Court finds that Defendant is entitled to summary judgment on Plaintiff's ADA claims. First, Plaintiff has failed to set forth a *prima facie* case of disability discrimination by failing first to present any competent summary judgment evidence that she is "disabled" or "regarded as" disabled as defined by the ADA, and Plaintiff's own evidence supports that Defendant was unaware of the alleged disabilities for which she sought accommodation. Moreover, Plaintiff has failed to present any evidence to establish prong three of her *prima facie* case – that she was terminated because of her disability. Indeed, the email communication requesting accommodations for an undisclosed disability is dated September 16, 2015.[51] It is undisputed that this request came *after* Plaintiff was placed on administrative leave while Lewis' complaint against her was being investigated. There is not a scintilla of evidence in the record before the Court to connect Plaintiff's termination to any request for accommodations for a purported disability she acknowledges was never disclosed to her employer. The Court finds that no reasonable jury could find in favor of Plaintiff on this claim, and Defendant is entitled to summary judgment on Plaintiff's ADA claims.

### D. Louisiana Whistleblower Claim

Plaintiff claims she was terminated in retaliation for "refusing to recreate missing documents and concealment of data breach" in violation of La. R.S. 42:1169, La. R.S. 51:3071, and La. R.S. 23:967. The Louisiana Whistleblower Statute prohibits an

---

[50] *Id.* at 21 (Deposition of Tabbatha Johnson, p. 82, lines 4-8).
[51] Rec. Doc. No. 167-1 at 45.
50025

employer from taking reprisal against an employee who, in good faith, and after advising the employer of a violation of law, objects or refuses to participate in an employment practice that is in violation of law.[52] The statute requires that an employee prove an *actual* violation of state law in order to prevail.[53] Furthermore, an employee's reasonable belief that an employer's acts or practices are unlawful is insufficient to state a claim under La. R.S. 23:967.[54] Louisiana state appellate courts hold that "[t]he statute targets *serious* employer conduct that violates the law."[55]

La. R.S. 42:1169 prohibits reprisal against a state government employee for disclosing another public employee's alleged improper acts. La. R.S. 51:3071 allows a plaintiff to bring a civil action to recover damages resulting from the failure to timely disclose "a breach of the security system" resulting in the disclosure of a person's personal information.[56] It is Plaintiff's position that Glasgow officials violated these laws.

At the end of the 2015 school year, the Glasgow ESS Department was missing several folders containing student IEPs and other information. Ultimately, when staff returned to Glasgow in August 2015 for the new school year, the ESS Department instructed staff to remake missing folders and print IEPs and other documentation from the database so the folders would be complete. The Department also instituted new

---

[52] La. R.S. 23:967.
[53] *Becnel v. Department of Social Services, Office of Comm Svcs*, No. 09-988-B-M2, 2011 WL 2416259 at *9 (M.D. La. May 20, 2011)(citing *Price v. B & B Transport Services, Inc.*, 2006–1482 (La . App. 1 Cir. 5/4/07), 2007 WL 1300932 (citing other Louisiana state appellate court decisions holding similarly); *Wells v. City of Alexandria*, 2004 WL 909735 (5th Cir.2004))(emphasis added).
[54] *Id.* (citing *Puig v. Greater New Orleans Expressway Comm'n*, 2000–924 (La.App. 5th Cir.10/31/00), 772 So.2d 842, *writ denied*, 2000–3531 (La.3/9/01), 786 So.2d 731).
[55] *Causey v. Winn-Dixie Logistics, Inc.*, 2015-0813 (La. App. 1 Cir. 12/23/15), 186 So.3d 185, 187 (citing *Fondren v. Greater New Orleans Expressway Com'n*, 03–1383 (La.App. 5 Cir. 4/27/04), 871 So.2d 688, 691)(emphasis added).
[56] La. R.S. 51:3075.

50025

Page 10 of 14

protocols to avoid a repeat problem in the future.[57] Plaintiff acknowledged that she did not participate in the remaking of folders.[58]

Although Plaintiff has presented no admissible evidence to establish her claim, Plaintiff alleges the members of the Glasgow ESS Department were instructed to create missing documents. The record, however, demonstrates that the ESS Department was only instructed to remake missing *folders*, the contents of the folders containing students' IEPs, report cards, state testing results, etc., were printed from the School System database. There is no evidence before the Court that these documents were "forged" or recreated by Glasgow staff as Plaintiff maintains.[59] Plaintiff's deposition testimony on this issue is telling. Plaintiff admitted that an email from Glasgow administration regarding remaking the folders did not instruct anyone to forge documents or signatures;[60] that she was not certain if the documents for the folders were printed from the database;[61] and that she was not involved in remaking the folders.[62] Plaintiff testifies about what she heard from others in the Department,[63] but this in inadmissible hearsay. There is no summary judgment evidence before the Court to establish that Defendant violated any state law.

Further, once again, the dates of these events undermine Plaintiff's reprisal claim. As demonstrated above, Plaintiff was advised that she was terminated on September 18, 2015. Plaintiff's own exhibits confirm that she reported this "folders" incident to the

---

[57] Rec. Doc. No. 167-3 (*Affidavit* of Shana Wilson).
[58] Rec. Doc. No. 167-1 at 13 (Deposition of Tabbatha Johnson, p. 65).
[59] Rec. Doc. No. 167-3 at 3 (*Affidavit* of Shana Wilson, ¶ 7).
[60] Rec. Doc. No. 167-1 at 10 (Deposition of Tabbatha Johnson, p. 58).
[61] *Id.* at 12 (Deposition of Tabbatha Johnson, p. 61).
[62] *Id.* at 13 (Deposition of Tabbatha Johnson, p. 65).
[63] *Id.* at 10 (Deposition of Tabbatha Johnson, p. 58).

School Board Superintendent on September 22, 2015.[64] Plaintiff's Ethics Board Complaint also confirms this sequence of events.[65] Plaintiff argues in her *Opposition* that she has evidence to establish that she reported this "wrongful conduct" before her termination;[66] however, she fails to cite to such evidence, and all evidence before the Court only bolsters Defendant's argument. Moreover, Plaintiff wholly failed to address Defendant's argument that she has no evidence that the ESS Department actually violated any state law. Accordingly, Plaintiff has failed to demonstrate genuine issues of material fact on this claim, and Defendant is entitled to summary judgment on Plaintiff's Louisiana Whistleblower claim.

### E. Wage Claim under La. R.S. 23:631

Plaintiff claims her final wages were withheld in violation of La. R.S. 23:631. As previously noted, Plaintiff was advised of her termination on September 18, 2015. Plaintiff's pay stubs establish that she was paid for the payroll periods ending on September 15, 2015, September 30, 2015, and October 14, 2015.[67] Nevertheless, Plaintiff maintains that she should have been paid through November 20, 2015, the date of the School Board meeting at which her termination was on the personnel report. In opposition to Defendant's motion, Plaintiff states: "Plaintiffs testimony is that payment was to continue. Until an official termination at the School Systems board meeting."[68] Plaintiff offers a School Board policy that requires terminations of support personnel to be approved by the School Board.

---

[64] Rec. Doc. No. 167-1 at 52.
[65] *Id.* at 66.
[66] Rec. Doc. No. 173-1 at 7.
[67] Rec. Doc. No. 167-1 at 57-59
[68] Rec. Doc. No. 173-1 at 8.
50025

Defendant maintains that Plaintiff's employment is not governed under this policy; rather, Defendant submits that Plaintiff's termination is governed by the Dismissal of Employees Policy and Employee Discipline Policy, which provides that school employees, such as paraprofessionals, may be dismissed by the Superintendent and are not entitled to a hearing before the School Board. Indeed, the policy provides:

> All employees of the system whose dismissal is not governed by the provision of La. Rev. Stat. Ann. §§17:441-446, or by the provisions of La. Rev. Stat. Ann. §§17:491-494, shall be subject to dismissal by the Superintendent. Such employees shall not be entitled to a hearing before the School Board.[69]

Plaintiff has failed to offer competent summary judgment evidence to demonstrate a fact issue regarding her wage claim. The record demonstrates that Plaintiff was not entitled to a hearing before the School Board prior to her termination, Plaintiff was terminated on September 18, 2015, and Plaintiff received all payment due under the law. Defendant is entitled to summary judgment on Plaintiff's wage claim.

### F. Criminal Statutes

Plaintiff does not appear to oppose Defendant's argument that she has no private right of action against it under Louisiana criminal statutes. Accordingly, any claims brought under La. R.S. 14:72 (forgery), 14:26 (criminal conspiracy), 14:47 (defamation); and 14:122 (public intimidation and retaliation) are dismissed.

---

[69] Rec. Doc. No. 167-2 at 20.

## III. CONCLUSION

Accordingly, Defendant's *Motion for Partial Summary Judgment*[70] is GRANTED. Plaintiff's claims subject to this motion are dismissed with prejudice. Defendant did not seek summary judgment on Plaintiff's COBRA[71] claim, and this claim remains before the Court.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 5th day of February, 2019.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[70] Rec. Doc. No. 167.
[71] Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 *et seq.*
50025